IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, <br><br> *Plaintiff*, <br><br> v. <br><br> PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD, <br><br> *Defendant*. | No. 3:24-cv-00254 <br><br> Judge William L. Campbell, Jr. <br><br> Magistrate Judge Jeffrey S. Frensley |

## PLAINTIFF'S MOTION FOR LEAVE TO LITIGATE THIS CASE PSEUDONYMOUSLY AND BRIEF IN SUPPORT THEREOF

Plaintiff respectfully moves for leave to litigate this action under the pseudonym "John Doe" rather than in his actual name.[1] As explained below, three arguments support this motion: (1) Plaintiff's lawsuit challenges the enormous prosecutorial power being wielded against him by a quasi-governmental regulator purporting to act under federal statutory law; (2) public revelation of Plaintiff's true identity would contravene statutory confidentiality protections enacted by Congress in the Sarbanes-Oxley Act of 2002 and subject Plaintiff to severe and immediate reputational harm; and (3) allowing Plaintiff to proceed pseudonymously would in no way prejudice or disadvantage the Defendant—which already knows Plaintiff's true identity—or the public at large.

---

[1] Pursuant to Local Rule 7.01(a)(1), undersigned counsel state that because this motion is being filed contemporaneously with the filing of the complaint, no counsel has yet filed an appearance on behalf of the defendant and thus we were unable to confer with such counsel to determine whether or not the relief requested in this motion is opposed.

1

## BACKGROUND

This action seeks to stop Defendant Public Company Accounting Oversight Board ("PCAOB" or "Board") from continuing its unlawful and unconstitutional prosecution of an accountant. The Board is a nominally private, nonprofit corporation empowered by Congress to regulate and punish the accountants and accounting firms that audit the financial statements of publicly traded companies and broker-dealers. *See generally* 15 U.S.C. § 7211. Punishment for violating Board rules can be severe, including loss of livelihood and civil penalties up to $1 million per violation for natural persons. *Id.* § 7215(c)(4) and (c)(5) (as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (codified at 28 U.S.C. § 2461 note). A willful violation of Board rules can also lead to million-dollar criminal fines and incarceration for up to 20 years. *See id.* §§ 78ff(a), 7202(b)(1).

The Board recently launched a formal prosecution of Plaintiff seeking to impose significant civil monetary penalties against him and effectively strip him of his chosen, licensed profession as an accountant. Not only are the Board's allegations false and defamatory, but worse, the Board seeks to adjudicate them in an unfair and unconstitutional proceeding.

Fortunately for Plaintiff and others subjected to the Board's defamatory and unproven allegations, Congress put confidentiality limits in place to protect the personal privacy and reputations of accused parties unless and until the Board's disciplinary process has run its full course and a comparatively accountable governmental body—specifically, the Securities and Exchange Commission ("SEC")—determines that public disclosure of the allegations is appropriate. *See* 15 U.S.C. § 7215(b)(5)(a) and (c)(2). Plaintiff should not be required to sacrifice those protections as a pre-condition to challenge the constitutionality of the Board and its processes.

2

**ARGUMENT**

Although plaintiffs ordinarily are required to use their real names when litigating in federal court, the Sixth Circuit and other courts have allowed plaintiffs to litigate pseudonymously in appropriate circumstances. *See, e.g., Doe v. Salvation Army in the U.S.*, 685 F.3d 564, 565n.1 (6th Cir. 2012) ("Doe was permitted to proceed pseudonymously in order to protect him from public disclosure of his medical condition."); *Doe v. Dordoni*, 806 Fed. Appx. 417, 418 n.1 (6th Cir. 2020) ("proceeding pseudonymously due to his fear of religious persecution"). This exercise of judicial discretion requires deciding "if the privacy interests of the party seeking anonymity substantially outweigh the strong presumption in favor of open judicial proceedings." *Doe v. Metro. Gov't of Nashville and Davidson Cty.*, No. 3:23-cv-00736, 2023 WL 6211372, at \*1 (M.D. Tenn. Sept. 25, 2023). Here, that balancing weighs decidedly in favor of pseudonymity.

**I.    Sixth Circuit Precedent Supports Pseudonymity**

This Court and the Sixth Circuit have identified a non-exhaustive list of circumstances that weigh in favor of protecting a plaintiff's anonymity:

> (1) whether the plaintiff seeking anonymity is suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiff to disclose information "of the utmost intimacy"; (3) whether the litigation compels plaintiff to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiff is a child.

*Metro. Gov't of Nashville*, 2023 WL 6211372, at \*1 (citing *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004)); *see also D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016) (citing the same factors). "Other factors that may be considered include whether the plaintiff would risk suffering injury if identified and whether the defendant would be prejudiced by the plaintiff's proceeding anonymously." *Metro. Gov't of Nashville*, 2023 WL 6211372, at \*1 (quoting *Doe v. FedEx*

3

*Ground Package Sys., Inc.*, No. 3:21-cv-00395, 2021 WL 5041286, at *5 (M.D. Tenn. Oct. 29, 2021)).

Plaintiff here meets these criteria. This case presents purely legal challenges to the constitutionality of the enforcement and disciplinary process being deployed against him by the Defendant Board, which is acting essentially as an arm of the federal government under powers purportedly granted by Congress in the Sarbanes-Oxley Act of 2002. Courts have recognized that such cases do not present the same concerns about potential reputational injury to the defendant resulting from pseudonymous plaintiffs as do suits against purely private parties, particularly private individuals. *See Doe v. Webster Cty.*, No. 4:21-cv-00093-JHM, 2022 WL 124678, at *2 (W.D. Ky. Jan. 12, 2022) ("Courts outside this circuit have found that '[w]hether the defendant is a governmental entity or a private defendant is significant because governmental bodies do not share the concerns about reputation that private individuals have when they are charged with wrongdoing'" (citing *Doe v. Shakur*, 164 F.R.D. 359, 361 n.1 (S.D. N.Y. 1996)).

This Court should recognize the same, too. Because the Board exercises governmental or quasi-governmental powers including regulation and enforcement, it should be subject to the same analysis. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 486 (2010) (holding "the Board is 'part of the Government' for constitutional purposes") (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995)); *id.* at 504 (the Board engages in "executive activities typically carried out by officials within the Executive Branch").

**II. Pseudonymity Would Preserve Personal Privacy and Reputational Protections Legislated by Congress in Sarbanes-Oxley, and Would Incentivize Challenges to Abuses of Executive Power**

In *Doe v. MIT*, 46 F.4th 61 (1st Cir. 2022), the First Circuit recently offered its own thoughtful and comprehensive insights into the kinds of "paradigm" cases where parties should be

4

permitted to litigate pseudonymously—and our case fits squarely into two of those paradigms. One includes "suits that are bound up with a prior proceeding made confidential by law." *Id.* at 71–72. As the court explained, "[t]his concern manifests itself when denying anonymity in the new suit would significantly undermine the interest served by that confidentiality." *Id.*

That is precisely the case here. In the Sarbanes-Oxley Act, Congress balanced the critical personal privacy and reputational interests of Board-accused accountants against the competing interest of public transparency, and in doing so made the deliberate legislative choice to favor confidentiality, unless and until the Board completes its proceedings, imposes any sanctions, and thereby enables the accused to appeal the case to SEC. *See* 15 U.S.C. § 7215(b)(5)(a) and (c)(2). But if, to challenge the constitutionality of the Board's enforcement and disciplinary process, Plaintiff were required to publicly reveal his true identity before the point at which Congress determined such public revelation to be appropriate, the personal privacy and reputational protections served by Sarbanes-Oxley would be nullified.

Allowing Plaintiff to proceed pseudonymously also comports with a related paradigm the First Circuit identified as favoring pseudonymity: "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated." *Doe*, 46 F.4th at 71. To plaintiff's knowledge, only one other person has ever proactively filed suit in an Article III district court to challenge the constitutionality of a formal, nonpublic disciplinary proceeding being prosecuted by the Board.[2] That other litigant has filed a similar motion to prosecute his case pseudonymously, and per the parties' stipulation that motion has been held in abeyance until the court's' decision on a pending motion to dismiss the case. *See Doe v. PCAOB*, No. 23-cv-00149-S, ECF No. 13 (N.D. Tex., Joint Case Management Stipulation filed Feb. 17, 2023). If these two

---

[2] The successful petitioners in *Free Enterprise Fund v. PCAOB* sued the Board before the initiation of formal disciplinary proceedings, which never occurred.

5

litigants are denied leave to litigate their cases pseudonymously, they will likely be the last, because few if any Board-accused accountants or firms have the capacity to fight back at all, much less the rare fortitude required to fight that battle in a public forum years before—if ever—the Board's accusations might otherwise become a matter of public record.

In the alternative, theoretically, a Board respondent like Plaintiff could persevere through the Board's entire multi-year disciplinary gauntlet, in the hope of becoming a rare (and perhaps the first ever) unicorn who eventually prevails in that tribunal.  Due to the Board's notorious secrecy, a successful defense before the Board prevents any public revelation of the proceeding. (For this reason, it is impossible for Plaintiff or any other Board respondent to determine whether any of the Board's hundreds of prior enforcement targets over the past two decades has ever prevailed before the Board; the public is informed only about those who lost before the Board.)

For the overwhelming majority of Board respondents—those who lose before the Board— they then must persevere through at least another year or two of appellate proceedings before SEC, *see* 15 U.S.C. § 7217(c) (as a result of which the case would become public), and then eventually can challenge the constitutionality of the Board's process in a federal court of appeals, *see* 15 U.S.C. § 78y(a). But that alternative option is largely illusory given its ruinously prolonged and expensive course. Since its creation in 2002, the Board has completed several hundred formal disciplinary proceedings, many of which accused multiple respondents. Yet according to the limited information available on the Board's public website,[3] respondents in only 12 Board enforcement cases have ever appealed their sanction even to the Board members (much less to SEC or a federal court), and the last time the Board members decided such an appeal on the merits was more than six years ago (in December 2017). All of the Board's hundreds of other disciplinary

---

[3] *Enforcement Actions*, PCAOB, pcaobus.org/oversight/enforcement/enforcement-actions (last visited March 4, 2024).

cases were resolved through settlements or defaults in which the respondents capitulated to the Board's demands and sanctions without mounting a defense, much less raising constitutional challenges to the process itself. And of the 12 Board-adjudicated appeals, only nine appear to have ever been further appealed to SEC, with only two of those nine cases (*i.e.*, approximately one-half of one percent of the hundreds of Board disciplinary proceedings completed over the Board's first 22 years in existence) ever being heard by an Article III court.

Given these disquieting statistics (and the economic realities they reflect), opportunities for meaningful judicial oversight of the Board's secretive disciplinary process are likely to remain few and far between—especially if proactive litigants like Plaintiff are required to "out" themselves prematurely to challenge the process. Courts should instead welcome such challenges wherever possible to ensure timely judicial scrutiny of prosecutorial processes that are alleged to violate the constitutional separation of powers and individual constitutional rights. After all, as the Supreme Court has repeatedly emphasized, it is "the claims of individuals—not of Government departments—[that] have been the principal source of judicial decisions concerning separation of powers and checks and balances," *Bond v. United States*, 564 U.S. 211, 222 (2011), such that courts should avoid "creating[ing] a disincentive" to bringing such claims, *Ryder v. United States*, 515 U.S. 177, 182–83 (1995); *accord Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018) (quoting *Ryder* in noting that courts should "create '[]incentive[s]'" for litigants to raise Appointments Clause challenges against executive action).

Allowing court challengers to remain protected by the statutory confidentiality provisions of Sarbanes-Oxley undoubtedly would incentivize more Board-accused accountants to seek prompt judicial decisions on the constitutionality of the Board's disciplinary processes and tactics. Conversely, forcing challengers to prematurely make public the Board's accusations against them

7

would strongly disincentivize such challenges and have an obvious chilling effect on would-be challengers, thereby allowing a constitutionally dubious prosecutorial scheme to continue in the shadows unchecked for an indeterminate period of additional years. As the First Circuit recognized in *Doe*, this alone should tip the balance heavily in favor of allowing pseudonymity. 46 F.4th at 71.

### III. Pseudonymity Would Not Prejudice the Board's Defense or the Public's Right to Know

Courts are rightly concerned when a plaintiff alleges wrongdoing against a defendant—especially a private party defendant—yet refuses to allow the defendant to learn the plaintiff's true identity, especially under circumstances that might prejudice the defendant's ability to mount an effective defense. But that is not the case here. The Defendant Board already knows Plaintiff's identity and commenced secret disciplinary proceedings against him in September 2023 after several years of intrusive investigation. For this reason, there would be no conceivable prejudice to the Board in allowing Plaintiff to litigate this case pseudonymously, and doing so would in no way impair the Board's ability to defend itself.

Nor is Plaintiff's identity of any particular interest to the public at large. He is raising purely legal and constitutional objections to a quasi-governmental process over which he has no meaningful control. Indeed, there are no nonpublic facts about him or his underlying Board proceeding—least of all his name—that would render his constitutional objections any more or less meritorious if revealed in this matter. For purposes of this case, the only relevant fact about Plaintiff is that he, like hundreds of other accountants before him and sure to follow him, is an accused respondent in an unlawful Board disciplinary proceeding—a fact already made clear in his Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff should be granted leave to litigate this case pseudonymously.

Dated: March 5, 2024

s/*Thomas K. Potter, III*
Thomas K. Potter, III (TN Bar. No. 024857)
BURR & FORMAN LLP
222 Second Avenue South
Suite 2000
Nashville, TN 37201
(615) 724-3231
tpotter@burr.com

Russell G. Ryan*
Casey Norman*
Kaitlyn D. Schiraldi (TN Bar. No. 039737)**
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street, NW Suite 450
Washington, DC 20036
(202) 967-2503
russ.ryan@ncla.legal
* *pro hac vice to be filed*
***M.D. Tenn. Admission pending*

*Counsel for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

I hereby certify that this motion will be served on the Defendant Public Company Accounting Oversight Board in hard copy at the same time, and in the same manner, as the Summons and Complaint in this matter. It will also be sent by electronic mail to the General Counsel of Defendant, James Cappoli (cappolij@pcaobus.org), promptly after its filing through ECF.

/s/ *Russell G. Ryan*
Russell G. Ryan*
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street, NW Suite 450
Washington, DC 20036
(202) 967-2503
russ.ryan@ncla.legal
*pro hac vice to be filed*

*Counsel for Plaintiff John Doe*