IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:24-cv-00254 |
| v. | ) |
| | ) |
| PUBLIC COMPANY ACCOUNTING | ) JUDGE CAMPBELL |
| OVERSIGHT BOARD, et al. | ) MAGISTRATE JUDGE FRENSLEY |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint or, in the alternative, to transfer the case to the United States District Court for the District of Columbia. (Doc. No. 44). Plaintiff John Doe filed a response in opposition (Doc. No. 48), to which Defendants filed a reply (Doc. No. 49).

For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and this case will be transferred to the United States District Court for the District of Columbia.

### I. BACKGROUND[1]

Defendant Public Company Accounting Oversight Board ("Board") is a private, nonprofit corporation created by Sarbanes-Oxley § 101, 15 U.S.C. § 7211. (¶¶ 2, 11). The Board is organized under the laws of the District of Columbia and maintains its headquarters there. (¶ 2). The Board has over 800 employees among at least a dozen offices nationwide. (*Id*.). The Board asserts regulatory jurisdiction over more than 1,500 registered public accounting firms worldwide,

---

[1] The facts are as alleged in the First Amended Complaint. (Doc. No. 34). For ease of reference, citations in this section to the First Amended Complaint will be to the specific paragraph(s) as follows: "¶ __."

including 17 headquartered in Tennessee, along with innumerable accountants associated with those firms. (*Id.*). The Board is led by five Board members, who are appointed by the commissioners of the Securities and Exchange Commission. (¶ 12). Current Board members are Defendants Erica Y. Williams, Christina Ho, Kara M. Stein, Anthony C. Thompson, and George R. Botic. (¶¶ 3-7).

Plaintiff John Doe is a certified public accountant in Tennessee. (¶ 1). Until the Board commenced disciplinary proceedings against him in September 2023, Plaintiff was a partner of a firm that is registered with the Board as a "registered public accounting firm" within the meaning of the Sarbanes-Oxley Act, 15 U.S.C. § 7201(a)(12), and was based in that firm's office in this District. (*Id.*). He served as managing partner of that office. (*Id.*).

Sometime in 2019, the Board began investigating Plaintiff in connection with audit work performed in 2018 related to the financial statements of a publicly traded corporation headquartered in this District. (¶ 66). A substantial portion of the audit work at issue was performed in this District. (¶ 9, ii). During its investigation, the Board issued requests and demands for business records that were created in, maintained in, and ultimately produced to the Board from locations in this District. (¶ 9, iv). The Board also interviewed Plaintiff and other witnesses in this District remotely via video teleconference. (¶ 9, v-vi).

In September 2023, the Board instituted formal disciplinary proceedings against Plaintiff. (¶ 67). As a result of the Board's disciplinary prosecution against him, Plaintiff lost his job in this District and is "effectively unemployable" as an accountant. (*Id.*).

Plaintiff instituted this lawsuit on March 5, 2024, by filing a complaint against Defendant Public Company Accounting Oversight Board. (Doc. No. 1). On August 8, 2024, Plaintiff filed the First Amended Complaint against Public Company Accounting Oversight Board and added the

2

five Board members as defendants. (Doc. No. 34). Plaintiff brings seven claims, which he summarizes as follows:

> (1) the Board's disciplinary adjudication process unlawfully usurps and purports to relocate the "judicial Power of the United States"—which Article III of the Constitution vests exclusively in federal "courts" ordained and established by Congress—by vesting that power in a private corporation whose legitimate functions, if any, are solely executive rather than judicial;
>
> (2) the Board, its prosecution staff, and its Chief Hearing Officer assigned to superintend and adjudicate the disciplinary prosecution against Plaintiff are private parties, not government employees, yet they wield punitive executive law enforcement power against Plaintiff under color of federal law without meaningful direction and supervision by any principal officer of the executive branch in violation of Article II of the Constitution;
>
> (3) the Chief Hearing Officer is an inferior constitutional officer who has not been lawfully appointed under the Appointments Clause of Article II of the Constitution;
>
> (4) the Chief Hearing Officer is also protected by multiple layers of protection from removal by the President in violation of Article II of the Constitution;
>
> (5) the Board's disciplinary prosecution deprives Plaintiff of his right to a jury trial in violation of the Sixth and Seventh Amendments to the Constitution;
>
> (6) the Board's disciplinary prosecution is systemically biased, secretive, and unfair in violation of the Due Process Clause of the Fifth Amendment to the Constitution and the "fair procedures" requirement of Sarbanes-Oxley §105(a); and
>
> (7) the Board's prosecution is being funded by money raised and spent in violation of the Appropriations, Taxing, and Spending Clauses of Article I of the Constitution and the separation of powers principles enshrined in those clauses.

(First Amended Complaint, Doc. No. 34 at PageID# 195). Plaintiff seeks an injunction prohibiting the Board from continuing its disciplinary prosecution against him and a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), declaring the Board's disciplinary prosecution against him unconstitutional and otherwise unlawful. (*Id*. at PageID# 231).

3

## II.     ANALYSIS

Before the Court is Defendants' motion under Federal Rule of Civil Procedure 12(b) to dismiss Plaintiff's First Amended Complaint. (Doc. No. 44). Defendants' reasons to dismiss are myriad – they include that: (1) Plaintiff fails to plead facts showing personal jurisdiction over Defendants; (2) the Court lacks subject matter jurisdiction over Plaintiff's fair process and jury-trial-right challenges (Counts 5 and 6); (3) Plaintiff fails to state a claim based on the Board's funding procedures (Count 7); (4) Plaintiff failed to exhaust administrative procedures; (5) Plaintiff cannot establish entitlement to injunctive or declaratory relief given the pendency of agency proceedings; and (6) the Board members should be dismissed because Plaintiff's official-capacity claims against them are redundant of his claims against the Board itself. (*See generally*, Doc. No. 44-1). In the alternative, Defendants seek transfer of this case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a).

For the reasons discussed below, the Court finds transfer to the United States District Court for the District of Columbia is appropriate. In light of this decision, the Court need not address the various arguments for dismissal raised by Defendants. As a threshold matter, a Court must ordinarily be satisfied that it has subject matter jurisdiction before ruling on other issues with a case, including a motion to transfer venue. *Grimsley v. United Eng'rs & Constr., Inc.*, 818 F. Supp. 147, 148 (D.S.C. 1993) (finding that it lacked subject matter jurisdiction over the action and thus lacked "the power to transfer"). Here, Defendants do not argue the Court lacks subject matter jurisdiction over the entire action, but only as to two claims. (*See* Doc. No. 44-1 at PageID# 281-87).

Defendants' request to transfer is governed by 28 U.S.C. §1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

4

civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

As a threshold issue under 28 U.S.C. § 1404(a), the Court considers whether the proposed venue is a district where this action "might have been brought." Here, there is no question that venue is proper in District of Columbia because that is the location of the Board's incorporation and headquarters. *See* 28 U.S.C. § 1391(b), (c).

Once it is established that the action might have been brought in the district to which transfer is sought, courts have broad discretion to determine when party convenience or the interest of justice make transfer appropriate. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009). In exercising this discretion, the Court must consider the "private interests of the parties" and "other public-interest concerns." *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006). Factors relating to the convenience of the parties include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises, if relevant; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 62, n.6 (2013). Factors relating to the public interest include the local interest in having localized disputes decided at home; the administrative difficulties resulting from court congestion; and the interest in having a trial of a diversity case in a forum at home with the law that will be applied. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 62, n.6 (2013). Courts are also to give some weight to the plaintiff's choice of forum. *Id.* (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The burden of demonstrating transfer is warranted is on the moving party. *Means v. United States Conf. of Catholic Bishops*, 836 F.3d 643, 652, n.7 (6th Cir. 2016).

5

Defendants argue that most of the private interest factors are of minimal relevance because Plaintiff raises purely legal questions. Indeed, the parties agree that discovery in this case "will be limited and targeted, and will not include any depositions or expert[s]," and that the case will likely be resolved on pretrial dispositive motions. (*See* Initial Case Management Order, Doc. No. 35 at PageID# 236, 240). To the extent that discovery is necessary, Plaintiff's discovery requests served on August 22, 2024, seek documents and information concerning the Board's structure, oversight, internal operations and communications, and documents concerning or reflecting communications or meetings about the investigation into and subsequent disciplinary proceedings against Plaintiff. (Verrilli Decl., Doc. No. 44-2 at ¶ 2). Defendants state that custodians of documents responsive to these requests would be located in the District of Columbia where the Board is located. Defendants state that the Board has no offices, data centers, or document in storage in Tennessee. Therefore, no responsive documents would be located in this District.

Defendants also argue that the case would be more efficient and expeditiously handled in the District Court for the District of Columbia because that court is already handling an "almost identical" case against the Board brought by a Doe plaintiff who is represented by one of the same attorneys as Plaintiff in this case.[2] *See Doe v. Pub. Co. Acct'g Oversight Bd.*, No. 1:24-cv-00780 (D.D.C. Jan. 19, 2023) (seeking an injunction prohibiting the Board from continuing the disciplinary proceeding against the plaintiff and a declaratory judgment that the Board's disciplinary proceedings against the plaintiff violate the Constitution – specifically, Articles I and II, the Seventh Amendment, and the Due Process Clause). After the briefing on this motion was

---

[2] Another case, *Doe v. Pub. Co. Acct'g Oversight Bd.*, No. 1:24-cv-02443 (D.D.C. Mar. 27, 2023), was transferred to the District Court for the District of Columbia from the District Court for the Southern District of Texas on August 22, 2024, then returned to Southern District of Texas, and subsequently dismissed after the Board's Division of Enforcement and Investigations completed its investigation and determined not to recommend any enforcement action. *See John Doe Corp. v. Public Co. Acct'g Oversight Bd.*, No. 4:24-cv-1103 (S.D. Tex.), Doc. Nos. 45, 46, 52, 53.

complete, a John Doe Corporation filed another case raising similar issues in the District Court for the District of Columbia. *See Doe Corp. v. Pub. Co. Acct'g Oversight Bd.*, No. 1:25-cv-70 (D.D.C. Jan. 10, 2025), Doc. No. 1 (seeking a permanent injunction restraining the Board from continuing disciplinary proceedings against the plaintiff and declaratory judgment that the Board's disciplinary proceeding violates the Constitution – specifically, Article II, the Seventh Amendment, the Due Process Clause, and the private and public non-delegation doctrines). Defendant argues it would be inefficient to litigate the same constitutional questions in different forums. The Court agrees.

With regard to the public interest factors, the Court finds the District of Columbia has a much stronger interest in the dispute than Tennessee. Plaintiff challenges the actions and structure of the Board, which is incorporated in and has its principal place of business in the District of Columbia. The disciplinary proceeding against Plaintiff is taking place in the District of Columbia. And the statutory and regulatory framework that Plaintiff challenges was promulgated in the District of Columbia. Therefore, it is reasonable to assume that the District of Columbia has a greater interest in monitoring the alleged misconduct of a corporate defendant that is located there than the courts in this district. *See City of Warren Gen. Emps. Ret. Sys. v. Rayonier Adv. Materials, Inc.*, 2018 WL 2984728, at *3 (M.D. Tenn. Jun. 14, 2018). Although Plaintiff is a resident of this District, none of the conduct relevant to his claims – the disciplinary action against him – occurred in Tennessee.

Defendants also contend that the District of Columbia is far less congested that this District. Judges in this District have an average of 556 pending cases per judge, while the District of Columbia has only 437. Defendants argue the interest of the public and the interests of justice favor transferring this case to the District Court for the District of Columbia because it is more convenient and less costly for the parties to proceed in a single forum. It would be a waste of

7

resources for this court to adjudicate constitutional disputes that are pending in other cases in the proposed transferee court, particularly when that Court is familiar with constitutional challenges to administrative agencies.

While the Court gives some weight to Plaintiff's choice of venue, in this case the vast majority of Plaintiff's allegations do not mention Plaintiff or the alleged wrongful conduct of Defendants concerning Plaintiff specifically, which makes it difficult to conclude that the private-interest factors support the chosen venue. Moreover, because this case will not involve meaningful discovery and largely involves only issues of law, the deference typically afforded to a Plaintiff's choice of venue lessens; this is especially true when, as here, a Plaintiff seeks a declaratory judgment. *Cincinnati Ins. Co. v. O'Leary Paint Co., Inc*., 676 F. Supp. 2d 623, 631 (W.D. Mich. 2009).

In sum, the private and public factors, as well as the pendency of other related cases in District Court for the District of Columbia, favor transfer of the case to that venue.

## III. CONCLUSION

For the reasons stated, Defendants' motion in the alternative to transfer this case to the United States District Court for the District of Columbia (Doc. No. 44) is **GRANTED**. Because this case is transferred to another court, the Court need not resolve Defendants' arguments for dismissal. However, in light of the transfer, the portion of Defendants' motion to dismiss related to personal jurisdiction is **MOOT**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE